UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SUSAN WARD and
GAVIN WARD,

      Plaintiffs,

v.                                CASE No. 8:07-CV-443-T-TGW

ERIC H. HOLDER, JR.,[1]
United States Attorney General, et al.,

      Defendants.

_____

## ORDER

This case involves a request for mandamus and for declaratory relief filed by the plaintiffs, Gavin Ward and his mother Susan Ward. The plaintiffs request that the court compel the defendants to apply the Child Status Protection Act ("CSPA") in this case and allow Gavin to complete a DS-230 immigrant visa application.

In 2005, the State Department denied Gavin the ability to follow-to-join his father, Ian Ward, a permanent resident, because it determined that

_____

[1]Eric H. Holder, Jr., has been named Attorney General. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he should be substituted as a defendant in this suit.

Gavin did not qualify as a "child" under the Act. Gavin's challenge to that determination is defeated by Ian's subsequent death.[2] Accordingly, summary judgment will be granted in favor of the defendants.

I.

Susan Ward, Gavin's mother, is a citizen of the United Kingdom, a resident of Florida, and a permanent resident of the United States (Doc. 20, p. 1). Ian, the deceased, a citizen of the United Kingdom, was approved on May 2, 2001, for an I-140 employment-based immigrant petition as a multinational executive or manager alien worker, which was filed by his United States employer, Flamingo Properties, Inc., on September 28, 2000 (see Doc. 19-2, Ex. 1). Susan and their children were considered derivative beneficiaries of Ian's employment visa.[3] At the time of the filing of the I-140 form, Gavin was nineteen years old, having been born on April 22, 1981 (Doc. 1, ¶ 23).

---

[2] Although Susan Ward is listed as a plaintiff in this case, the complaint contests only the denial of Gavin's application for status. Accordingly, a reference to the plaintiff will be to Gavin only.

[3] A spouse or a child of a principal alien who immigrated on the basis of an employment petition (I-140) are called derivative beneficiaries. The immigrating child and spouse may, but do not have to, obtain their visas with the principal alien. Thus, derivative beneficiaries who follow to join an immigrating parent, as Gavin did in this case, are not required to file a separate application. Robert C. Divine and R. Blake Chisam, Immigration Practice 2008-2009 Ed.: §14-5, p. 14-6.

After Ian's I-140 form was approved, he filed on February 4, 2002, an I-485 form, Application to Register Permanent Residence or Adjust Status, popularly known as a green card application, to adjust his status to that of a legal permanent resident under Section 245 of the Immigration and Nationality Act (Doc. 20, p. 5).[4] That application was approved on April 13, 2004, and Ian, his wife Susan, and two other sons, Ashley and Mark, who accompanied Ian to the United States, became permanent residents (Doc. 1, ¶¶ 24, 56; Doc. 21, ¶ 67). Gavin, the middle son, remained in England, apparently to complete his collegiate studies (Doc. 1, ¶ 4). In the meantime, Ian filed an I-824 form around the beginning of 2002 (the parties disagreeing on that date), so that his son Gavin, based on Ian's status, could follow-to-join him (id., ¶ 5; Doc. 14, ¶ 5).[5] See 8 U.S.C. 1153(d). This application was denied seemingly because Ian's I-485 application remained pending (Doc.

---

[4] It is noted that Congress has transferred the Immigration and Naturalization Service's responsibilities to the Department of Homeland Security. 6 U.S.C. 101, et seq., Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (2002).

[5] An I-824 form is an Application for Action on an Approved Application or Petition and provides the information necessary to process a following-to-join case. 9 FAM 42.42 PN3.4. The form is required by United States Citizenship and Immigration Services ("USCIS") before it will notify a United States Consulate through the National Visa Center that the father's status had been adjusted to permanent resident based on an approved I-485 application.

21, ¶ 23). The denial stated that a new I-824 application could be filed after the I-485 application was approved (Doc. 21-3, ¶ 11).

Accordingly, after the I-485 application was approved in April 2004, Ian filed a new I-824 application on Gavin's behalf on May 25, 2004. Gavin's I-824 form was approved on August 9, 2004 (Doc. 19, p. 2; Doc. 21, ¶¶ 9, 10). Gavin then requested DS-230 processing, but the Department of State's ("DOS") Visa Office declared that Gavin did not qualify for the CSPA, thereby precluding Gavin's ability to apply for a visa (Doc. 1, ¶ 31; Doc. 20, p. 2).[6] Specifically, the DOS concluded that Gavin did not qualify under the CSPA because he turned twenty-one on April 22, 2002, several months before the passage of the Act on August 6, 2002 (Doc. 1, ¶¶ 11, 31; Doc. 21-4, p. 6). DS-230 processing will not go forward by the National Visa Center until it receives notice from the United States Citizenship and Immigration Services ("USCIS") that an applicant is qualified to apply for a visa (Doc. 20, p. 4). Although that notice was given in 2004, Gavin was not

---

[6] A DS-230 form is an Application for Immigrant Visa and Alien Registration. It is required to be completed by a non-United States resident applying for an immigrant visa. Robert C. Divine and R. Blake Chisam, Immigration Practice 2008-2009 Ed.: §8-4(a)(2), p. 8-13.

allowed by the DOS to complete an application for immigration visa processing (DS-230).

On May 13, 2006, Ian died of cancer (Doc. 19, p. 3; Doc. 20, p. 5). Gavin's mother and two brothers continue to live in the United States as permanent residents (Doc. 14, ¶ 56). The government contends that the death of Ian extinguished any entitlement Gavin had to follow-to-join his father (Doc. 19, p. 1).

The plaintiffs filed this action on March 12, 2007, naming as defendants the United States Attorney General, the Secretary of the Department of Homeland Security, the Commissioner of the USCIS, the District Director of the Texas Regional Service Center of the USCIS, and the Chief of the Advisory Opinion Office for the United States DOS Visa Office, National Visa Center (Doc. 1). Gavin requests declaratory relief and a writ of mandamus requiring the defendants to allow Gavin to file his DS-230 application and to expedite that application (id., ¶ 58). The defendants answered the complaint (Doc. 14). The parties subsequently consented to the jurisdiction of a magistrate judge (Docs. 16, 17).

Thereafter, the defendants filed a motion for summary judgment and the plaintiffs have responded (Docs. 19, 20). Oral argument was heard

on the motion. Subsequently, additional memoranda were directed and received (Docs. 28, 29, 30, 31, 34, 35).

II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56( c). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

When the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial, or, alternatively, it may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." United States v. Four Parcels

of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

III.

The defendants move for summary judgment principally on the ground that, upon his father's death, Gavin is no longer entitled to a visa based on Ian's status (Doc. 19, p. 4). The defendants argued, alternatively, that, even if Ian were alive, Gavin would not be eligible to follow him as a child because he turned twenty-one on April 22, 2002 (id., pp. 4-5). They add that Gavin would not be benefitted by the CSPA, 8 U.S.C. 1153(h), a law that was designed to prevent children from aging out of that status while immigration petitions are being considered, because he turned twenty-one months before the Act was passed, and there are no provisions which extend coverage to him (id.). The plaintiffs' response to the summary judgment motion merely addressed this alternative argument regarding the CSPA (Doc. 20).

Whether the CSPA applies in this case is unclear. The file reflects the uncertainty of the CSPA's application to someone like Gavin who turned twenty-one before the Act was passed. Most notably, the USCIS granted the I-824 application in favor of Gavin (Doc. 1, ¶ 10), thereby indicating that he was protected by the CSPA. Thereafter, the State

Department refused to let him process the necessary DS-230 application because the CSPA did not afford him any benefit (id., ¶ 31). In other words, the two agencies that deal with these issues on a regular basis seem to disagree about the application of the CSPA to Gavin. In the same vein, the submissions include a series of e-mails debating the application of the CSPA in these circumstances (Doc. 21-4). It is unnecessary to resolve this difficult issue because the defendants' primary contention has merit.

The defendants, as indicated, argue that a child is not eligible to follow-to-join a parent once the parent is deceased (Docs. 19, 29, 31). They assert that, consequently, the death of Ian terminated his immigrant status and thereby stripped Gavin of his ability to benefit from that status (Doc. 19, p. 4; Doc. 29, pp. 3-4; Doc. 31, pp. 1-2). The defendants rely upon the following language in the DOS's Foreign Affairs Manual ("FAM"):

> The term "following to join," as used in . . . [8 U.S.C. § 1153(d)] permits an alien to obtain a nonimmigrant visa (NIV) or immigrant visa (IV) and the priority date of the principal alien as long as the alien following to join has the required relationship with the principal alien. There is no statutory time period during which the following to join alien must apply for a visa and seek admission into the United States. **However, if the principal**

> has died or lost status, there is no longer a basis
> to following to join. 9 U.S. Dep't of State, Foreign
> Affairs Manual § 40.1 n.7.1 (emphasis added).

"Visa petitions remain valid indefinitely subject only to revocation, withdrawal, utilization of the petition, failure to use pursuant to § 203(e) of the Act, or a change of facts disestablishing the beneficiary from entitlement to the status confirmed by the approved petition." Richard D. Steel, Steel on Immigration Law, 2d Ed.: § 5:44. "Thus, a qualifying familial relationship that is terminated due to death, 'aging out,' divorce or other events no longer entitles the derivative noncitizen to accompanying or following to join benefits." 3 Immigration Law and Procedure, § 37.05[2][a], p. 37-16. This principle was quoted by the Fifth Circuit in Bolvito v. Mukasey, 527 F.3d 428, 436 (5th Cir. 2008). It has been explained, similarly, that approval can be automatically revoked, if before the alien commences his journey to the United States, there is a "[c]hange in the situation of the petitioner or beneficiary eliminating the underlying eligibility for permanent residence, such as death of the beneficiary or family petitioner...." Robert C. Divine and R. Blake Chisam, Immigration Practice, 2008-2009 Ed.: §8-3(f), p. 8-10.

The defendants point out that this principle was applied by the Board of Immigration Appeals ("BIA") in Matter of Khan, 14 I&N Dec. 122 (1972 WL 27414) (Doc. 29, pp. 2-4). In that case, an alien child preceded his father, the principal alien, to the United States but was unaware that his father had died in Pakistan prior to the child's arrival. Matter of Khan, supra, 14 I&N at 123. The BIA concluded that the child was deportable because the issuance of an immigrant visa to a child is dependent upon the existence of the immigrant status of the principal alien. Id. at 124. "Death terminated the father's immigrant status and thereby stripped [the child] of his status." Id.

The plaintiff seeks to avoid his loss of status due to Ian's death on the basis of cases interpreting the terms "spouse" and "immediate relative" in circumstances involving an alien wife whose citizen-husband had died (Doc. 30, pp. 4-6). See Freeman v. Gonzalez, 444 F.3d 1031 (9th Cir. 2006); Lockhart v. Chertoff, 2008 WL 80225 (N.D. Ohio 2008). Those cases are inapposite since they involve an issue of statutory interpretation concerning immediate relatives of United States citizens that is not presented here.[7]

---

[7]USCIS has declined to follow Freeman v. Gonzalez outside the Ninth Circuit on the ground that it was wrongly decided. See USCIS Interoffice Memorandum, Mike Ayres, Associate Director of Domestic Operations for USCIS, AFM Update AD08-04, November

Moreover, the cases are also distinguishable because they did not involve follow-to-join situations. In those cases, before the husband died, the citizen-husband had filed an I-130 petition for an immigrant visa on behalf of the wife, and the wife had filed an I-485 application for permanent resident status. In this case, Ian himself was the beneficiary of an I-140 petition, and no immigrant visa petition had been filed on Gavin's behalf. Rather, all that was filed on behalf of Gavin was an I-824 application, which, as noted, is simply a request for action based upon an approved application or petition. In other words, Gavin was not seeking to immigrate on the basis of any application filed by, or for, him, but was merely seeking to follow to join his father based on his father's status. Consequently, it is entirely logical that, when the father's status ended, so did Gavin's.

Further, contrary to the plaintiffs' argument, the CSPA provides no assistance on the loss of status due to Ian's death. That Act concerns the matter of aging. The loss of status was based on Ian's death, and not on Gavin's age. Accordingly, the CSPA has no bearing on the loss of status in this case.

---

8. 2007.

Seemingly recognizing the lack of persuasiveness of these contentions, the plaintiffs' opening argument is that relief should be granted on humanitarian grounds pursuant to 8 C.F.R. 205.1 (Doc. 30, pp. 2-4). That contention also provides no basis for relief.

First of all, as the defendants note (Doc. 31, p. 2 n.1), it does not appear that 8 C.F.R. 205.1(a)(3) even applies. That regulation provides that "[t]he approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval ... [i]f any of the following circumstances [including death of the petitioner] occur before the beneficiary's or self-petitioner's journey to the United States commences." In that event, USCIS has discretion on humanitarian grounds to determine that it is inappropriate to revoke the approval of the petition. 8 C.F.R. 205.1(a)(3)(i)(c)(2).

Ian, the beneficiary of the I-140 petition, had journeyed to the United States and he received approval of his adjustment application (I-485) two years before he died. Moreover, there were no other petitions that were revoked. Thus, the automatic revocation regulation does not apply in this case.

Furthermore, even if the regulation were applicable, it does not authorize this court to exercise discretion on humanitarian grounds. Rather, such discretion is conferred upon the USCIS. Notably, the limitation of discretion to the USCIS is entirely reasonable since that agency, unlike the court, would have the breadth of experience needed to evaluate a claim of humanitarian grounds.

Moreover, there is no indication that the plaintiff has requested the USCIS to reinstate his status following his father's death. Thus, at least to this extent, the plaintiff has seemingly failed to exhaust his administrative remedies, as the defendants asserted in their motion (Doc. 19, p. 6).

For these reasons, Gavin lost his status as a derivative beneficiary when his father died. This conclusion is confirmed by the fact that a bill was introduced in Congress, unsuccessfully, to change this situation. See Save America Comprehensive Immigration Act of 2007, H.R. 750, §303(f), 110th Congress (2007).

It is, therefore, upon consideration

ORDERED:

That Defendants Motion for Summary Judgment (Doc. 19) be, and the same is hereby, **GRANTED**, and the Clerk shall enter judgment for the defendants and thereupon CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of February, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE